UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFF BRADY,<br><br>Plaintiff<br><br>v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; TRUEBLUE, INC. PLAN; and TRUE BLUE, INC.,<br><br>Defendants | No. 3:18-cv-5077-BHS<br><br>[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 52 WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter comes before the Court on Plaintiff Jeff Brady's ("Brady") motion for judgment under Federal Rule of Civil Procedure 52 (Dkt. 14). The Court has considered the parties' filings in support of and in opposition to the motion, and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 30, 2018, Brady filed a complaint under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") against Defendant Liberty Life Assurance Company of Boston ("LLACOB"), TrueBlue, Inc. Plan ("the Plan") and TrueBlue,

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 1
No. 3:18-cv-5077-BHS

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

Inc. ("TrueBlue") in its capacity as Plan Administrator of the Plan. Dkt. 1. Brady alleged three claims: (1) that Defendants incorrectly identified the employee "class" to which he belongs and that LLACOB is therefore paying him an incorrect disability benefit; (2) that the Plan and TrueBlue violated their fiduciary duties under ERISA; and (3) that TrueBlue violated 29 U.S.C. § 1132(c)(1)(B) by failing to comply with Brady's requests for information required to be furnished to an ERISA plan participant. *Id*.

On May 10, 2018, Brady filed a motion for judgment under Federal Rule of Civil Procedure 52 ("Rule 52"). Dkt. 14. The motion addresses only his first claim, that Defendants incorrectly identified his employee class and are paying an incorrect benefit. Brady also filed excerpts from the administrative record (Bates-stamped CF00001 to CF00483), and the insurance policy LLACOB issued and which provides the Plan's disability benefits (Bates-stamped P00001-P00058). Dkts. 15-4, 15-5.

## II. STANDARD OF REVIEW

This matter comes before the Court under Rule 52 as a "bench trial on the record," *Kearney v. Standard Ins. Co*., 175 F.3d 1084, 1095 (9th Cir. 1999). In *Kearney*, the Ninth Circuit "created a 'novel form of trial,' in which the district court, subject to its discretion to consider additional evidence under limited circumstances, is to conduct 'a bench trial on the record.'" *Thomas v. Oregon Fruit Products Co*., 228 F.3d 991, 996 (9th Cir. 2000) (quoting *Kearney*, 175 F.3d at 1095). "In a trial on the record . . . the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney*, 175 F.3d at 1095. *See also*, *e.g.*, *Morgan v. Hartford Life & Accident Ins. Co*., 274 F. Supp. 3d 1176 (W.D. Wash. 2017); *Bunger v. Unum Life Ins. Co. of Am.*, 196 F. Supp. 3d 1175, 1178 (W.D. Wash. 2016).

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 2
No. 3:18-cv-5077-BHS

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614 Fax 206.905-2342

The parties agree this case is subject to *de novo* review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) requires that when an action under 29 U.S.C. § 1132(a)(1)(B) is subject to *de novo* review the "court's entire review – both legal and factual – is *de novo*." *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1069 (9th Cir. 1999). On *de novo* review, an ERISA insurer's decision receives no deference. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). Instead, the court performs an "independent and thorough inspection" of the matter. *Silver v. Executive Car Leasing Long– Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006).

"In the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it denied the claim.'" *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 (9th Cir. 2009) (quoting *Kearney*, 175 F.3d at 1086). The parties have indicated that evidence outside the administrative record is generally not admissible. Dkts. 12, 15-1, 15-2. For the purpose of this opinion and order, the Court will rely exclusively on the plan documents and the evidence in the claim file.

Given the above law, the Court will resolve the parties' dispute regarding Brady's employee class in a bench trial on the administrative record. Therefore, the court issues the findings and conclusions set forth below, pursuant to Rule 52.

### III. FINDINGS OF FACT

**1.** TrueBlue provides benefits to its employees through the Plan. LLACOB insures and administers the Plan's long-term disability ("LTD") benefits through an insurance policy it issued to TrueBlue denominated Group Disability Income Policy No. GF3-860-066266-01 ("the Policy"). Dkt. 1 at ¶¶ 4.4-4.10; Dkt. 9 at ¶¶ 4.4-4.10; P 001; Dkt. 15-1 at 4:19-21.

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 3
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614 Fax 206.905-2342

**2.** TrueBlue hired Brady on May 28, 2013, as a Senior Software Developer. CF 001. It paid him $100,000 a year, or $8,333.33 per month. CF 115. Brady was previously the Chief Technical Officer of Limelight Technologies, Inc., an Information Technology ("IT") company with over 100 employees and offices in Tacoma, London and India. CF 126.

**3.** When it hired him, TrueBlue provided Brady a "Benefits Summary" that stated: "LTD benefits are paid after 90 days of disability and the monthly benefit is 60% of your basic monthly earnings (subject to taxes)." CF 118, CF 127 at ¶¶ 10-11.

**4.** Brady's work involved management of a large electronic enterprise resource planning system called "Ellis." This system served to create, organize and maintain information regarding the hundreds of thousands of workers TrueBlue assigns to the thousands of companies to whom it provides services. The Ellis system also created and maintained financial information regarding compensation for those workers, payroll and accounts receivable. CF 132-34. When working on the Ellis application, Brady trained and directed other employees less familiar with the system, and typically was helped by three or four people when doing so. CF 133.

**5.** Brady also worked on a "sprint team," a group of people developing a replacement for the Ellis system called "Prism." CF 133. Brady sometimes served as the "Scrum Master" on the Prism sprint team. *Id*. When doing so, he "assigned resources, roles and tasks; provided timeline mentoring and training; and tracked the progress of the resource duties in the group/team each day." CF 133.

**6.** Brady summarized his work at TrueBlue in a declaration that states in part:

> My work at TrueBlue involved management of projects, including the ongoing and substantial maintenance of the Ellis application, and management of people, particularly those less senior than I was. I managed other TrueBlue employees on multiple projects. I managed resources and assigned other employees tasks to perform. I created timelines and strategies, business rules and logic for projects to be performed by other TrueBlue employees. I provided feedback on

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 4
No. 3:18-cv-5077-BHS

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

improvements to TrueBlue employees that worked on my team, and provided opportunity for engineers to provide feedback. I defined structure and process where appropriate to aid the team. I set individual and team goals, which rolled up to meet organizational and company goals. . . . I managed and highlighted resource contention and assisted in prioritizing the work.

CF 133-34. Brady's description of his duties and responsibilities is credible, and consistent with his prior work experience as the Chief Technical Officer of a 100-person IT company.

**7.** Brady experienced an incapacitating stroke in January 2017. CF 452-53. He applied for LTD benefits. LLACOB agreed he was disabled. CF 333. It began paying benefits on April 8, 2017. CF 001.

**8.** The Policy provides for four levels of benefits. It states in relevant part:

Class 1: All Active, full-time Executives, Presidents, Vice Presidents and Directors

Class 2: All Active, full-time Managers

Class 3: All Active, full-time Employees, excluding Managers, Executives, Presidents, Vice Presidents and Directors

Class 4: All active, full-time Employees of Planetechs and SIMOS

P 003.

**9.** The Policy further states:

**What is the Amount of Insurance Benefits?**

Applicable to Class 1:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $10,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class 2:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $5,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class 3:

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 5
No. 3:18-cv-5077-BHS

LAW OFFICE OF MEL CRAWFORD
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $2,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class 4:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $8,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

P 006.

**10.** The Policy also states:

**Maximum Basic Monthly Earnings on which the Benefit is Based:**

| | |
|---|---|
| Applicable to Class 1: | $16,666.67 |
| Applicable to Class 2: | $8,333.33 |
| Applicable to Class 3: | $3,333.33 |
| Applicable to Class 4: | $13,333.33 |

P 006.

**11.** TrueBlue hired Brady at an annual salary of $100,000, or $8,333.33 per month. CF 115, 134. Sixty percent of $8,333.33 is equal to the maximum monthly benefit for Class 2 employees of $5,000.00.

**12.** After Brady applied for disability benefits, LLACOB stated he was a Class 3 employee, and thus entitled to a maximum monthly benefit of $2,000.00. CF 029. Because the Policy allows LLACOB to reduce the monthly benefit by the amount of any Social Security Disability Insurance benefit, P 039, P 041, and because the Social Security Administration found Brady disabled under its rules, LLACOB has paid Brady a net benefit of $200 a month since July 2017. CF 260, 265, 268.

**13.** On November 22, 2017, Brady appealed Defendants' determination that he was a Class 3 employee. He described the nature of his work at TrueBlue, noted that the term "Manager" was not defined in the Policy and was open to more than one reasonable interpretation, and that, because his work involved management duties, he should be deemed a

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 6
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

1  Class 2 employee and thus eligible to receive a gross disability benefit of $5,000.00, or 60% of
2  his pre-disability earnings.  CF 48-151.

3  **14.**  Defendants denied Brady's appeal on January 4, 2018.  CF 29-32.

### IV.  CONCLUSIONS OF LAW

**1.**  ERISA provides that a qualifying plan "participant" may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

**2.**  Brady is a "participant" of the Plan within the meaning of 29 U.S.C. § 1002(7).

**3.**  When conducting a *de novo* review of a decision by an ERISA plan administrator, the Court undertakes an independent and thorough inspection of the decision, and gives no deference to the plan administrator's decision.  *Silver*, 466 F.3d at 733; *Muniz*, 623 F.3d at 1295–1296. The Court may draw logical inferences where appropriate.  *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014), citing *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 871 (9th Cir. 2008).

**4.**  Brady has the burden to establish entitlement to disability benefits by a preponderance of the evidence. *Muniz,* 623 F.3d at 1294.

**5.**  "Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'"  *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) (citing *Firestone*, 489 U.S. at 113).  The terms of an ERISA Plan must be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience."  *Tapley v. Locals 302 and 612 of the Int'l Union of Operating Engineers—Employers Const. Industry Retirement Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013)

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 7
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

(internal quotations omitted). An ERISA plan must be construed as a whole. *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002). The specific language of each provision must be considered in the context of the entire plan. *Carr v. First Nationwide Bank*, 816 F.Supp. 1476, 1493 (N.D. Cal. 1993) (citing *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3rd Cir. 1992)). It is improper to construe provisions of a plan in a way that conflicts with the Plan's plain language or renders nugatory other provisions. *Tapley*, 728 F.3d at 1140.

6. "An ambiguity exists when the terms or words of a . . . plan are subject to more than one reasonable interpretation." *McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1110 (9th Cir. 2000). A term that is not defined in an ERISA plan may be deemed ambiguous. *See, e.g., Tapley,* 728 F.3d at 1140 ("[t]he term 'job classification' is clearly ambiguous; it is neither defined nor mentioned elsewhere in the Plan, and, not surprisingly, we have not seen the same language in any other plan that has received judicial scrutiny."); *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 942 (9th Cir. 1995) (terms "mental illness" and "functional nervous disorder" were not defined in plan and thus construed against the drafter); *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 624-25 (9th Cir. 2007) ("receives" deemed ambiguous); *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1134 (9th Cir. 1996) ("every" was ambiguous as used referring to "every duty").

7. The rule of *contra proferentem* applies to ERISA plans, and if "after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, . . . the interpretation that is most favorable to the insured will be adopted." *Blankenship*, *supra*, 486 F.3d at 625 (quoting *Kunin, supra,* 910 F.2d at 539).

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 8
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614 Fax 206.905-2342

**8.** Undefined terms in ERISA plans are given their "ordinary and popular meaning," which may require use of dictionary or other definitions. *Deegan v. Cont'l Cas. Co.,* 167 F.3d 502, 507 (9th Cir.1999); *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1195 (9th Cir. 2007).

**9.** The Policy does not define the term "Manager," and in the circumstances presented here, that word is fairly susceptible of more than one reasonable interpretation. Accordingly, the interpretation of that term most favorable to Brady must be adopted.

**10.** Merriam–Webster dictionary defines "manager" as, "one that manages: such as: a person who conducts business or household affairs." Merriam–Webster Dictionary, Manager, http://www.merriamwebster.com/dictionary/manager. Webster's New Universal Unabridged Dictionary (2d Ed.) defines "manager" as "one who has the conduct or direction of anything; as, the manager of a railroad; the manager of a lottery."

**11.** The preponderance of the evidence demonstrates that Brady's work at TrueBlue was that of a "manager." He conducted or directed, among other things, the ongoing and substantial maintenance of the Ellis application – which "served to create, organize and maintain TrueBlue's information regarding the hundreds of thousands of workers, the companies those workers provided services to, and all manner of financial information including compensation for the workers[.]" CF 132. Brady's work on the Ellis system required him to assign tasks to less senior employees, and to train and direct those employees. CF 133. His work when serving as the active Scrum Master for the Prism team was also managerial, as he "assigned resources, roles and tasks; provided timeline mentoring and training; and tracked the progress of the resource duties in the group/team each day." CF 133.

**12.** The Ninth Circuit has adopted the doctrine of "reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 9
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614 Fax 206.905-2342

contracts." *Saltarelli v. Bob Baker Grp. Med. Tr.*, 35 F.3d 382, 387 (9th Cir. 1994). It did so because "protecting the reasonable expectations of insureds appropriately serves the federal policies underlying ERISA, including provision of adequate information to plan participants and protection of their interests." *Id*. at 386. Brady's expectation that his LTD benefit would be 60% of his earnings was reasonable, given the TrueBlue benefits summary stating that disability benefits were "60% of your basic monthly earnings"; his monthly salary of $8,333.33; and the statement in the Policy that the $5,000.00 maximum monthly disability benefit for Class 2 employees was based on 60% of monthly pay of $8,333.33.

**13.** Brady's interpretation of the word "Manager" is reasonable, and that word describes the work he performed at TrueBlue. Brady was thus a Class 2 employee, entitled to a maximum monthly disability benefit of $5,000.00, or 60% of his pre-disability earnings.

### V. ORDER

For the foregoing reasons, the Court hereby ORDERS:

**1.** Brady's Motion for Judgment Under Fed.R.Civ.Pro. 52 (Dkt. 14) is GRANTED. Brady was a Class 2 employee, entitled to a maximum monthly disability benefit of $5,000.00 under the Plan.

**2.** LLACOB shall pay Brady a gross monthly disability benefit of $5,000.00, less any applicable offsets permitted under the Plan, for the period from April 8, 2017 through the date of judgment, and shall continue to pay Brady such benefits as long as he remains disabled under the terms of the Plan.

**3.** Brady is entitled to recover pre-judgment interest on all unpaid benefits, and to recover his attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 10
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342

**4.**  No later than ten (10) days from the date of this Order, Brady may file a motion to recover his attorney's fees and costs, and regarding the amount of pre-judgment interest he should be awarded, noting it for consideration pursuant to this Court's Local Rules.  The motion shall be supported by documentary evidence reflecting the amount of fees sought, and shall include argument as to the authority upon which such fees may be granted and why such fees are reasonable.  Defendants shall file any Response in accordance with the Local Rules, and Brady may file a Reply in accordance with the same.

DATED this \_\_\_\_ day of _____, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 11
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington  98115
Tel 206.694-1614  Fax 206.905-2342

# CERTIFICATE OF SERVICE

I certify that on the date noted below I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

<u>Attorneys for Defendants</u>:

Stacy Monahan Tucker
Stacy.Tucker@rmkb.com
Ropers Majeski Kohn & Bentley
800 5th Avenue Suite 4100
Seattle, WA 98104

Nancy W. Anderson
Alyson L. Palmer
nancy.anderson@millernash.com
alyson.palmer@millernash.com
Miller Nash Graham & Dunn LLP
2801 Alaskan Way, Suite 300
Seattle, WA 98121

DATED this 3rd day of June 2018 at Seattle, Washington.

s/*Mel Crawford*
Mel Crawford

[PROPOSED] ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT UNDER FRCP 52 - 12
No. 3:18-cv-5077-BHS

**LAW OFFICE OF MEL CRAWFORD**
9425 35th Avenue N.E., Suite C
Seattle, Washington 98115
Tel 206.694-1614  Fax 206.905-2342